At this time, we'd like to call the fifth case on our list, number 162227, Daniel Justiano et al. v. Social Security Administration Good morning to the court. This is Attorney Javier Andres Colon-Volgamor, representing Mr. Daniel Justiano, Mr. Francisco Menendez, Person A, and all other people similarly situated. I'd like to reserve the balance, about two minutes of my time for rebuttal. Two minutes. This is an appeals from a district court dismissal that was based on federal rule of Civil Procedure 12B1. The district court held that plaintiffs, and I quote, did not meet the waivable element of exhausting the applicable administrative remedies. As a result, plaintiffs failed to comply with the final decision requirement of section 405G of the Social Security Act, and judicial review over the complaint is not valid. This is an appellant's addendum, page nine. The Supreme Court in Weinberger v. Selfie analyzed section 405A, 405G, and held that it creates a distinct definition for the word final decision that is separate from other possible acts. It applies strictly to the Social Security Act, but leaves the contours of this definition to be fleshed out by regulation. This is in Selfie, page 769. The regulation applicable to the Social Security Act is in part 404 of Title 20 of the Code of Federal Regulations, and it adopts a definition of final decision that is a final decision is such that if not appealed, it would become binding. This is in 20 CFR 404.987A, which states, generally, if you're dissatisfied with a determination or decision made in an administrative review process, but do not request further review with the stated time period, you lose your right to further review, and that determination or decision becomes final. Again, if you do not review a decision and appeal the decision, that becomes final. That is the only definition of final decision within the Code of Federal Regulation, which Selfie said is the one that defines what a final decision is. However — Can I just — are you bringing a constitutional claim? In the claim, not before your honors. There's no constitutional claim? Before your honors, no. In the basic — in the claim on the merits, before the district court, there are constitutional claims. But you're not saying that there's a procedural — constitutional procedural due process problem with the pre-termination — The case on the merits — the case on the merits before the district court was dismissed for lack of subject matter jurisdiction. Right. And I'm trying to figure out whether the — for purpose of determining, I thought, whether the waivable aspect of exhaustion applies or doesn't. It may be relevant whether you're bringing a procedural due process claim, because that would be relevant to whether it's wholly collateral. Yes. And on the merits of the claim, yes, there is a contention of due process claim on two ways. There is also a contention that the process followed violates the regulation, and it violates the law. Yeah. I understand that. So the claim is, it violates at the three levels. The constitutional claim, first, is it violates due process. And on that side, please tell the agency to follow the process status, too, as set out. But also — and this is a part where trouble gets into the violation — the taking away of the due process rights creates what we claim a request for damages. So it's — there's a constitutional — comes in on two sides, on having the process be validated, the existing process be validated, and then also the illegal action, illegal in terms of violating the law to take away following a given situation. But just so I get the — put aside the damages for a second. There was a pre-termination denial without a hearing before an ALJ. Correct? A pre-termination denial without any process. You got notice, and then was — It was notice after the denial occurred, the termination occurred. So the benefits were actually cut off prior to being notified that they would be cut off? Or simultaneously? Simultaneously. A matter of days, not — I haven't figured out if it was exactly the day before or after. And that is a separate objection, which is that your claim is that that violates procedural due process. That violates procedural due process. And what do you say to the argument that you didn't ask the district court to waive exhaustion of that claim? In the complaint, paragraphs — specifically, paragraphs number 156 and number 167, the plaintiffs allege explicitly that they do not need to exhaust administrative process, the administrative due process. From the complaint, it was brought up. Well, but there's two aspects of that. There's the question of whether there you're talking about whether you had to channel it through a 405. Clearly you were saying you didn't have to fully channel it. Right? Then there's a separate issue of exhaustion. Am I right? So the claim — the two claims being the one for damages and the one for validating the due process as it exists, the one for validating due process as it exists, I recognize it needs to be channeled, but it was channeled. Okay. The one for damages — But not fully exhausted. But not fully exhausted. And did you ask the district court or the agency to waive exhaustion? Yes, but there is an interpretation of words, and I'm saying that the words need not be exhausted and the allegation that this need not be exhausted, plus the motions in opposition to the motion to dismiss discussing all the parameters for not exhausting or not exhausting is, in essence, a request for exhaustion. Otherwise, why go through the trouble of explaining it all? So I see — So you argue that the hardship is very severe from the pre-termination denial. Yes. That was pretty much decided in accordance. The only case that was decided against, given that we're talking about benefits from workers as opposed to welfare, was the case of Eldridge. But even Eldridge, the Congress then decided, no, we need to give them pre-termination hearings. Revoked, in essence, that part of Eldridge. There is a discrepancy that I see between the definition of final decision, which is, I think, what dictates here, that goes between if not rebutted, if not appealed, it becomes final. The defendants, appellees, wish to merge both elements again. And the non-waivable and the waivable, they wish to merge them again and define final decision as the last possible decision available, which means after exhaustion. Can I just ask one last thing about Eldridge? There's the — it has to be wholly collateral, it has to be undue hardship, and there has to be what a colorable argument on the merits. And here I put forward that Selfie, Eldridge, and Bowen versus City of New York dictate on what exactly — what kinds of claims would actually be wholly collateral. Yeah, but I — At least the procedural — I want to just focus for a second on the colorable claim on the merits. I understand that they changed the statute after Mathews versus Eldridge, but given the holding on procedural due process in Mathews versus Eldridge, what's the argument that you have a colorable claim on the merits on the procedural due process claim? I'm not getting the question. Wait, don't you have to show that you have on the merits that you have a colorable chance of winning? Yes. Yes. And the merits of the case were not discussed at all. That would have been the — Right. But you have — if you want to excuse exhaustion, don't you have to convince someone, either the district court or us, that the claim would be a colorable one on the merits? So getting into the — may I answer? Yes. Yes. So getting into the claim on the merits, the people, the plaintiffs, received a notice that their benefits were being terminated after benefits were terminated. That is what they received. Notice your benefits are going to be terminated. There is no process whatsoever that they were involved before termination occurred. So at all — In some cases, post-termination process can make up for the pre-termination process. So my question is, given that holding, why is your case different than that? Matthews was specific on a particular part of the process. Matthews, the plaintiffs in Matthews, requested a pre-termination hearing, evidentiary hearing. But in the case of Matthews, the Social Security Administration set out this — provide them this opportunity to respond, notified them of their intention, received further evidence, requested response to the evidence, let them know what the tentative decision is going to be, and then decided. Eldridge wanted an additional step, which is a pre-termination hearing, and the Court said that the Constitution, Fifth Amendment — I see. — does not allow. All that other process you just described was pre-termination process. All that process was pre-termination. And in the case of Mr. Justiniano, there was absolutely no process. So in Eldridge, the existence of process justified not having a pre-termination hearing. And what we requested in the complaint was not necessarily a hearing per se, but a process that occurs where they may defend their benefits before termination. Thank you for your time. Good morning, and may it please the Court. Thomas Pullen for the Social Security Administration and the Acting Commissioner. I'd like to begin by just clarifying a couple of items that came up in the preceding presentation. As the plaintiffs actually allege in their complaint, they received a notice of suspension before the benefits were terminated. These are two different actions. During the suspension, all that means is benefits are temporarily stopped while the agency conducts its redetermination. After that, there was a redetermination made, and that's when benefits were actually terminated. The notices of suspension, Ms. Dismitt explained in her declaration, provided the plaintiffs with an opportunity to submit additional evidence. They were also given that opportunity after their redetermination decisions were made. Is the point of that that the suspension issue, then, is moot? Well, I don't believe that they actually challenged the suspension. Suspension is a separate action from the termination. So your claim, then, is that with respect to termination, there was pre-termination process? There was a notice that the agency was going, was undertaking a redetermination, and it invited, the notice invited the plaintiffs to submit evidence, and then the redetermination was done. And I would like to say that this is in a somewhat different position than Eldridge. Eldridge involved the termination of benefits because of an assessment that Eldridge was no longer disabled. That is a different process that's governed by a different section of the statute. But I'm just trying to figure out for constitutional purposes, the significance of what you're saying is that you're, is what? That there was pre-deprivation, pre-termination process of a sort, just not a full-blown hearing? That's correct. And so what's the significance of that with respect to the point about exhaustion? If we thought that the procedural due process thing was wholly collateral, and we thought that there was undue hardship, is that an argument that on the merits, there's not a colorable argument that there was a due process violation? Yes. I just wanted to clarify. No, I understand. But I'm now, now that you, must have been a reason you were trying to clarify it. So I'm trying to figure out what aspect of the analysis the clarification is relevant to. More just to assure the Court that there was some pre-termination process. Let me ask you, was there enough such that you don't think it's a colorable procedural, the government's position is there is no colorable procedural due process claim? Yes. To the extent that the plaintiffs bring an independent due process claim, I think that's right. This case is governed squarely by Matthews v. Eldridge. But I encourage the Court to look at the complaint and, indeed, the plaintiff's brief. I don't think there is an independent due process claim there. I believe the claim is that due process was violated because the reopening regulations weren't followed. So it's just a repackaging of the claim under the regulations. The plaintiffs appear to be arguing that when the agency deviates from a regulation, that violates due process because that's the process that's provided by the regulation. So that's an entirely different type of, that's just not a due process claim. What do we do if we don't read the complaint the way you read it? Then I believe we proceed with the was the question of colorability. Is colorability fleshed out at all below? No. The district court didn't address this at all because the plaintiffs hadn't asked the district court to waive exhaustion. So the district court addressed the arguments that the plaintiffs made, which were first that the claim did not arise under the Act. But he says today, your brother says, I believe, that, in fact, they did make the request. It's sort of in there somewhere where they say exhaustion isn't required. What's included in that is that the request was made. But did the court, is there any indication that the court read them to be, to be making that request? No. In fact, the contrary. The district court expressly said, and we cited this in our brief, that the plaintiffs have not asked the court to waive the second requirement. And there was no reconsideration on that, no request for reconsideration on that point or anything like that. Okay. That is correct. But on the other hand, didn't the district court say that it wouldn't matter if you did because I don't see any basis for exhausting? The district court did say the court does not see a reason to do so. So, in effect, if there was, if we read them to have asked, we have a ruling by the district court that he was going to reject it if they asked. Yes? In a way, yes. But, I mean, without kind of full consideration, I mean, this is just the district court saying I don't see anything that kind of jumps out at me. I mean, they didn't make a ask. He doesn't have anything to pin that to because they didn't ask. That's correct. That's correct. And under these circumstances, I'm not, this is not an issue that this court should be deciding in the first instance where the district court did not give a kind of, have a full opportunity. So, if we read the papers below to have actually sought exhaustion, you would recommend we remand? Well, the court does do that, yes, when it's a kind of difficult issue. Sometimes the court will remand and we cite a case for that proposition that it's better to have the district court kind of give a full decision before the court can do, can review it on it. But we would, if the district court did rule, we would review it de novo? That's correct. So, this court could, could reach it. That's, that's, that's true. And if we're going to do that, then if the court were inclined to overlook the forfeiture or view it as properly preserved, we would move to the inquiry, which involves a consideration of three elements. One, whether the claim is entirely collateral to the administrative review process. Two, whether there is sufficient showing of irreparable harm. And third, consideration of the policies underlying the exhaustion requirement. And we don't believe that applying that inquiry, this claim, exhaustion should be. So, is the colorability of the claim not relevant to the exhaustion analysis, then? The way Eldridge put it was, I believe, it's a colorable showing of irreparable harm. And several courts have looked at that as involving kind of both a examination of whether the claim is colorable. Because if there's no colorable claim, there's no colorable, you know, showing of harm. And then second, is there actually a colorable showing of harm, if the claim is colorable? I hope that addresses your question, but looking at this, this claim is just not entirely collateral to a claim for benefits. And to see that, we need no, look no further than the plaintiff's complaint. And the relief they request on that claim is payment of benefits, payment of past due benefits, and an injunction against seeking an overpayment. But that's partly because they've got a bunch of different claims going. But with respect to just the procedural due process violation in pre-deprivate, in pre-termination, in the termination of the benefits, that would be wholly collateral, right? Well, before I get there, I just want to point out, we're looking where they have this due process claim, to the extent they have one, is in count one of their complaint, which they title a violation of 20 CFR 404988. And in that section of the complaint, they ask for the reinstatement of benefits. So this is not a separate relief. Is that the reinstatement of benefits forever, or are they just saying you can't cut them off until we have the full process? Because those are two different types of relief. Sure. All they say is the reinstatement of benefits as it were before, pay. But that would be consistent with the procedure. If I seek to end early termination of benefits prior to your hearing, what I would like is to have the old benefits reinstated. But I'm not saying when I say that, and no matter whatever happens, that's conclusive for all time. Well, I think those are two different things. A district court in Kentucky evaluated this, and it actually found a due process violation with respect to the redetermination procedure, specifically the inability to challenge the reason to believe predicate. And that court said the whole process isn't infected. All we need is a little supplemental hearing. And it did not order the reinstatement of benefits. But it could have been wrong in that regard. It might have been wrong. It might have been wrong. So that's what I'm asking, because that seems to me to just demonstrate the point that it is wholly collateral, because you're not seeking the final, ultimate resolution of the benefits question. You're just saying in the interim, you have no basis for cutting me off, given the hardship that I face. Well, I think this... And that seems to me just consistent with Matthew's. I mean, I'd like to say two things, if I may, before I sit down. One, I would encourage this court to look at Elgin, which we cited, which said that... Elgin doesn't deal with pre-termination benefits. No, but it... So that's the whole point, though. The point is that when you're talking about the pre-termination, that raises the point about it being wholly collateral. Well, Elgin deals with an inquiry of whether a claim is collateral. And it said a constitutional claim is not collateral when it's the vehicle by which... But the nature of the constitutional claim there would have meant that the final resolution of the benefits issue was decided. Here, the nature of the constitutional challenge isn't a resolution of the final determination of benefits.  That... Yes, but we believe that that is sufficiently intertwined with the request for benefits to not be wholly collateral. And even if the Court thinks that it is collateral, what the Supreme Court has said is that this inquiry should be guided by a practical consideration of the claim asserted and the consequences of deferment, and whether review will be available at some point. Eldridge cited Cohen, the collateral order doctrine case, which deals with whether the claim will be kind of reviewable at the end. And we have confirmation from all of these courts, from the three courts in Kentucky, that these claims are, in fact, fully reviewable following the exhaustion of administrative remedies. And what's your argument about... What's your answer to the hardship that people have to endure in the interim, particularly since they seem to be winning at the end? Because it seems like a little bit of an odd response from the government to be saying, well, it's no big deal, because in the end, often you win, when their argument is the interim is the problem. We know we're going to win at the end. Right. Right. I'd say a couple of things. One is that these plaintiffs were recipients of SSDI benefits, which are insurance benefits, not welfare benefits. So as the Supreme Court recognized in Eldridge, there's less expectation that while the deprivation may be significant, there's reduced expectation that it will cause the same degree of harm. Second, the plaintiffs don't, I think, make the same types of allegations of irreparable harm. For Plaintiff Menendez, for example, he says that his family is supporting him and indeed providing his medical insurance. So we don't have there the same kind of risks to health that were viewed as sufficient in other cases. And third, this is a case involving a significant possibility of fraud. We have a doctor here who has admitted to making false statements to the Social Security Administration, and I don't think we would expect the agency to just ignore that or to not consider the possibility of harm to the government with respect to all of these benefits that are going out that are, frankly, unlikely to be recouped. These plaintiffs have sought a waiver of the collection of overpayment because they're unable to repay the benefits. If I understand the numbers, there were 7,000 claims that were potentially affected by the doctor, right? 7,000, that is correct. There were kind of two groups of... And the conclusion was that there were 2,000 where they ultimately decided there might have been a problem? Is that right? 2,000 went through the redetermination process. Because the other 5,000 were thought not to be a problem? That's right. They were not. And then of the 2,000, what are we... A large number turned out after you go through the whole process, they're not a problem either, right? No, I believe it whittled down to something like 1,800. Yeah. So 1,800 of the 7,000. The thing that's just as strange is that the government makes a point of the plea agreement having said the vast majority of the cases in which the doctor was involved were fraudulent, but by the government's own facts, it's the opposite. The vast majority were fine. Well, no. What, if I may clarify a little bit, what Section 405 requires, indeed what it orders the agency to do, is to immediately redetermine entitlements to benefits when there's a reason to believe fraud may have been involved. So the agency doesn't have to conclude that there was in fact fraud. No, I'm just saying the government's argument was that the reason to believe is that he had said the vast majority. But it just, as it happens, the government's own account, after they did the first cut, was that the vast majority were not. Is that right? That's true. I mean, he... And yet it still cut off benefits without having a fuller hearing. Yes. It suspended the benefits and then terminated... It first suspended benefits pending redetermination, and then it went forward with the redetermination And after the redetermination and reconsideration processes happened, we were left with about 1,200 beneficiaries who sought a hearing before the administrative law judge, before an administrative law judge. That is the group in which the plaintiffs here find themselves. So that doesn't mean that the rest of them were reinstated. In fact, it was probably the opposite, is what you're saying. The rest of who? I'm sorry? If 1,200 sought process out of 2,000, it might have been 1,800 after that first cut. So what happened to the other several hundred? Do we have any idea? Yes. I believe that... I'm sorry. I'm looking for the figure. There were about 360 whose redetermination decisions were reversed on reconsideration. Okay. And then it went to the ALJ. Okay. Thank you. We've gone way over. Yes. Thank you. I'd like to point out the cases of Kentucky, which are trying to review the same types of laws. There is a big difference between the cases in Kentucky and the cases in Puerto Rico. The cases in Kentucky, the congressman from Kentucky went to the Social Security Administration and says, no, you can't take these away, and the commissioner reinstated everybody. So the question of pre-termination, pre-hearing termination for the cases of Kentucky do not match the cases here, because politically, they reinstated everybody while the process is carrying on. That's not the situation here. Other than that, I would like to commend, I think you called him brother, which is a nice term, because I appreciate the work and the clarity of his work. It's been nice to see it. That's it.